## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CHRISTOPHER J. KALISHEK,**

      **Plaintiff,**

**v.**                         **Case No.  8:10-cv-714-T-23AEP**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

      Plaintiff in this case seeks judicial review of the denial of his claims for a period of disability and disability insurance benefits.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, I recommend that the decision be affirmed.

### I.

      Plaintiff was forty-nine years old when the Administrative Law Judge ("ALJ") issued his decision in this case. (Tr. 23, 110.)  He stands approximately 6 feet tall and weighs approximately 180 pounds. (Tr. 27, 28.)  He is single with no children. (Tr. 27.)  He holds a bachelor's degree in chemistry and previously worked as a field support engineer and a user support analyst (customer service representative). (Tr. 22, 27, 43.)  As a field support

---

[1]  This matter comes before the undersigned pursuant to a Standing Order of this Court. (*See* Dkt. No. 4); *see also* Local Rules 3.05(c)(1)(B) and 6.01(c)(21).

engineer for Hewlett-Packard, he traveled around the world to install, repair, and upgrade laboratory instrumentation, as well as to train laboratory personnel how to use equipment. (Tr. 29, 154.)   He was in an airplane accident in June 1997 and subsequently switched jobs within Hewlett-Packard.  (Tr. 29.)  As a customer service representative for the company, Plaintiff would provide technical support to scientists regarding laboratory instrumentation. (Tr. 29.)  Plaintiff alleged that he became unable to work on February 10, 2005 due to a leg impairment originating from the plane accident, as well as epilepsy. (Tr. 134.)

On June 21, 2006, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. (Tr. 110.)  The claim was denied initially on September 21, 2006 and upon reconsideration on February 9, 2007. (Tr. 51, 59- 60.) Thereafter, Plaintiff filed a written request for a hearing on March 28, 2007. (Tr. 67-68.)  On April 14, 2009, the ALJ held a video hearing, in which Plaintiff appeared in Clearwater, Florida, and the ALJ presided over the hearing from Jacksonville, Florida. (Tr. 15.)  Plaintiff was represented by counsel and testified on his own behalf. (Tr. 15, 27-42).  Before the ALJ were medical records outlining Plaintiff's medical history.  These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

In a decision dated May 7, 2009, the ALJ found that Plaintiff had the following severe impairments: status post multiple lower extremity fractures, post traumatic osteoarthritis, and headaches.[2] (Tr. 17, Finding 3.)  The ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the

---

[2]The ALJ found that Plaintiff's "isolated episode of loss of consciousness/possibility of seizures" was not a severe impairment. (Tr. 19-20.)

2

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20, Finding 4.)  After

careful consideration of the entire record, the ALJ found that Plaintiff had the residual

functional capacity ("RFC") to perform light work[3] with the following limitations: (1) must

be able to alternate positions at will from sitting and/or standing/walking; (2) must avoid

ladders or unprotected heights and operation of heavy moving machinery; (3) can

occasionally bend, crouch, and stoop but never kneel, squat, or crawl; and (4) must avoid

operation of foot controls. (Tr. 20, Finding 5.)  The ALJ also noted that Plaintiff uses a

monocane to ambulate. (Tr. 20, Finding 5.)  Based on the testimony of a vocational expert

("VE"), the ALJ found that Plaintiff was able to perform his past work as a user support

analyst (customer service representative), which is described by the Dictionary of

Occupational Titles ("DOT") as skilled, sedentary work. (Tr. 22.)  Furthermore, based on the

testimony of the VE, the ALJ also found that Plaintiff had the capacity to perform other jobs

existing in significant numbers in the national economy, including:

(1) a mail clerk, which is light, unskilled work with 35,000 jobs available nationally

and 1,000 available regionally;

---

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

(2) an office helper, which is light, unskilled work with 30,000 jobs available nationally and 2,200 available regionally;

(3) a ticket seller, which is light, unskilled work with 151,000 jobs available nationally and 3,000 available regionally (1/3 of the ticket seller jobs are considered sedentary with 50,000 jobs available nationally and 1,000 available regionally); and

(4) a surveillance systems monitor, which is sedentary, unskilled work with 33,000 jobs available nationally and 700 available regionally.

(Tr. 22-23.)  Based on the foregoing facts, the ALJ found Plaintiff not disabled under the Social Security Act from February 10, 2005 through the date of his decision. (Tr. 23, Finding 7.)

On January 26, 2010, the Appeals Council denied Plaintiff's request for review. (Tr. 1-3.)  Plaintiff has exhausted his administrative remedies and has timely filed a civil action in this Court.  Plaintiff appeals seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). (Dkt. No. 1).

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id*. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 1035 (2005). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).[4]   Similarly, it is the responsibility of the Commissioner to draw

---

[4]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

5

inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The ALJ, in part, decided Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These Regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment, but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." *Id.* § 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. *Id.* § 404.1569. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. *Id.* § 404.1569a.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42

6

U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

## III.

Plaintiff appears to challenge the ALJ's decision on four grounds:

(1) the ALJ's credibility finding was not supported by substantial evidence;

(2) the ALJ failed to find that Plaintiff's heterotopic ossification was a severe impairment;

(3) the ALJ improperly found that Plaintiff's impairments did not meet Listing 1.02A; and

(4) the ALJ's finding that Plaintiff could return to his past relevant work was not supported by substantial evidence.

For the reasons discussed below, none of the contentions warrants reversal.

## 1. The ALJ's Credibility Findings

Plaintiff challenges the ALJ's credibility finding. (Dkt. No. 12 at 9-13.)  Among other things, he contends that the ALJ's decision does not properly discredit "the testimony of medication side effects." (Dkt. No. 12 at 11.)

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints.  As the Court of Appeals explained in *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "require[s] evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of

such a severity that it can be reasonably expected to give rise to the alleged pain."  This

standard also applies to complaints of subjective conditions other than pain.  *Holt v. Sullivan*,

921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ discounts Plaintiff's testimony concerning

subjective complaints, he must "articulate explicit and adequate reasons" for doing so.  *Dyer*

*v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Foote v. Chater*, 67 F.3d 1553,

1561-62 (11th Cir.1995)).  "A clearly articulated credibility finding with substantial

supporting evidence in the record will not be disturbed by a reviewing court." *Foote v.*

*Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

         In addition to Eleventh Circuit case law, Social Security regulations describe the

kinds of evidence that should be considered by an ALJ in assessing the credibility of a

claimant, in addition to the objective medical evidence.  *See* 20 C.F.R. § 404.1529.  Some of

the factors that should be considered by the ALJ in weighing a claimant's credibility include

activities of daily living, the location, duration, frequency, and intensity of the claimant's pain

or other symptoms, and precipitating and aggravating factors.  *See* 20 C.F.R. § 404.1529(c).

"[S]tatements about [a claimant's] pain and other symptoms will not alone establish that [the

claimant is] disabled."  20 C.F.R. §404.1529(a).

         In the instant case, the ALJ applied the Eleventh Circuit pain standard to Plaintiff's

subjective complaints by stating that:

>            In considering the claimant's symptoms, the undersigned must
>            follow a two step process in which it must first be determined
>            whether there is an underlying medically determinable physical
>            or mental impairment(s)–i.e. an impairment(s) that can be
>            shown by medically acceptable clinical and laboratory

> diagnostic techniques–that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

(Tr. 20.)  Applying the pain standard, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, he also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 21.)

In reaching this conclusion, the ALJ carefully considered all of the evidence, including Plaintiff's description of his daily activities, the medical records, the effect of his medications, his appearance at the hearing, the opinions of treating and examining physicians, and the inconsistency between Plaintiff's testimony and the records. (Tr. 21-22.)  The ALJ clearly articulated several reasons in support of his credibility finding, many of which were not disputed by Plaintiff. (Tr. 21-22; Dkt. No. 12 at 11-14.)  For example, Plaintiff does not dispute the ALJ's consideration of daily activities when discrediting his credibility.  Here, Plaintiff testified that he occasionally did laundry, washed dishes, cooked simple meals, and went to the grocery store. (Tr. 31, 34.)  He also testified that he drives to the park two to three

times each week to fly model airplanes. (Tr. 34-35.)  Accordingly, the ALJ properly

concluded that his activities were inconsistent with the limitations he alleged. *See Moore v.*

*Barnhart*, 405 F. 3d 1208, 1212  (11th Cir. 2005) (upholding the ALJ's credibility

determination, which relied on the inconsistencies between the claimant's "descriptions of

her diverse daily activities and her claims of infirmity").

Further, Plaintiff does not challenge the ALJ's consideration of Plaintiff's admission

that he stopped working in February 2005 for reasons not related to his allegedly disabling

impairments.  Plaintiff clearly testified that his "job, as well as a lot of others, were

outsourced" and that he was laid off. (Tr. 30.)  As such, he did not stop working due to any

alleged disability.  Similarly, Plaintiff does not dispute the ALJ's consideration of his ability

to look for work after February 2005 and his receipt of unemployment benefits for six months

in 2005. (Tr. 20, 28.)  Standing alone, the receipt of unemployment benefits does not

disqualify a claimant from consideration for Social Security benefits. *Harris v. Astrue*, No.

3:08-cv-726-J-32MCR, 2009 WL 2242618, at *13 (M.D. Fla. July 27, 2009).  However, an

ALJ may certainly consider a claimant's receipt of unemployment compensation in making a

credibility determination. *See Boyd v. Astrue*, No. 3:10-cv-105-J-JRK, 2011 WL 1259795, at

*7 (M.D. Fla. March 31, 2011); *see also* 20 C.F.R. § 404.1529(c)(3)(vii) (providing that the

ALJ may consider "[o]ther factors concerning [a claimant's] functional limitations and

restrictions due to pain or other symptoms").  Plaintiff's failure to dispute the ALJ's

consideration of these factors undermines his argument that the ALJ's credibility

determination was not based on substantial evidence.

10

Plaintiff does challenge, however, the ALJ's consideration of the fact that his

medication helped his condition.  In his decision, the ALJ states that:

> Medical records show that the claimant has received various
> forms of treatment for the allegedly disabling impairments and
> that he has taken appropriate medications, which would
> normally weigh somewhat in the claimant's favor; however, ,
> [sic] the record also reveals that the treatment and medications
> have been generally successful in controlling the claimant's
> symptoms.

(Tr. 21.)  Plaintiff himself also testified that the prescription medications "seem to help." (Tr.

28.)  Plaintiff argues that the ALJ "never mentioned side effects of medication even though

they are specifically mentioned in the regulations as one factor the ALJ must consider." (Dkt.

No. 12 at 11.)  This argument is without merit.  As an initial matter, the ALJ considered

Plaintiff's allegation of side effects from his medications when evaluating the credibility of

his statements. (Tr. 20, 21, 28-29.)  Moreover, there does not appear to be any medical

evidence to support Plaintiff's testimony that he "believe[s] the tiredness and dizziness that

[he] feel[s] are attributed to the hydrocodone or Vicodin that [he] take[s]." (Tr. 29) *See*

*Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (finding that, where the record does

not disclose any concerns about side effects from doctors, the ALJ's determination that the

side effects did not present a significant problem is supported by substantial evidence); *see*

*also Lapuyade v. Astrue*, No. 8:06-cv-2642-T-26TGW, 2007 WL 4461189, at *6 (M.D. Fla.

Dec. 14, 2007) (same).  Plaintiff's testimony also fails to explain how the side effects impair

his ability to work and points to no evidence in the record other than his own assertions to

support his claims of side effects. (Dkt. No. 12 at 11.)  Because Plaintiff failed to cite any

11

medical evidence from a doctor expressing a concern over adverse side effects from medication, he has not demonstrated that the ALJ's findings with regard to Plaintiff's credibility are not based on substantial evidence.

Moreover, Plaintiff argues that it is "improper for the ALJ to deny the credibility of a claimant because he doesn't appear to be in pain at the hearing," (Dkt. No. 12 at 13) especially when that hearing is held by video conference.  While the Court agrees that an ALJ cannot discredit a claimant's testimony based solely on his observations at the hearing, the ALJ "is not prohibited from considering the claimant's appearance and demeanor during the hearing." *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987).  Here, as in *Macia*, the ALJ did note Plaintiff's demeanor but did not discredit his testimony solely on this basis. *See Id.* Rather, the ALJ clearly stated that his observation of Plaintiff at the hearing "is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity." (Tr. 22.)  As such, Plaintiff's argument is without merit.

Next, Plaintiff takes issue with the ALJ's finding that Plaintiff's statements are inconsistent with the record.  In making this argument, however, Plaintiff merely shows how his testimony at the hearing is not inconsistent with statements he had made in the past. For example, he states that he testified at the hearing that he uses a cane for walking anywhere, which is consistent with his statements in the Disability Report that he uses a cane to walk around the house and his statements in the Function Report that he uses a cane on most days, but on bad days needs to use crutches. (Dkt. No. 12 at 11-12.)  The mere citation to Plaintiff's

own statements of his own symptoms is insufficient to establish an impairment, let alone a disability. 29 C.F.R. §§ 404.1528(a), 404.1529(a).  Moreover, Plaintiff's argument is undermined by the fact that the ALJ clearly recognized that Plaintiff uses a monocane to ambulate. (Tr. 20, Finding 5.)  Plaintiff also argues that he cannot walk to the park, but this is not inconsistent with the ALJ's finding that Plaintiff will need to be able to alternate positions at will from sitting and/or standing/walking. (Tr. 20; Dkt. No. 12 at 12.)  Although Plaintiff contends that he both testified at the hearing and stated in his "forms" that he gets headaches and has trouble sleeping at night, he cites to no medical evidence to support this contention. Overall, merely providing some examples of consistency among his statements on the "forms" and at the hearing, without more, is insufficient to demonstrate how the ALJ's credibility determination is not supported by substantial evidence, especially where, as here, the ALJ took these limitations (where supported) into account when formulating Plaintiff's RFC.

Finally, Plaintiff challenges the ALJ's consideration that the record contained no opinion from a physician indicating limitations greater than those determined in the decision. (Dkt. No. 12 at 11.)  Plaintiff does not dispute that this finding was accurate at the time of the ALJ's decision. Rather, Plaintiff argues that Dr. Lowenstein's September 2009 opinion (Tr. 787-791)[5] undermines this finding by the ALJ and should have been more adequately reviewed by the Appeals Council.  (Dkt. No. 12 at 14.)  The evidence was dated five months

---

[5]Dr. Lowenstein provided two assessments in September 2009: an assessment related to Listing 1.02 and an assessment regarding Plaintiff's ability to perform work-related activities.  The assessment related to Listing 1.02 is addressed subsequently in this Order.

after the ALJ's decision and submitted to the Appeals Council, but after consideration of the evidence, the Appeals Council denied review. (Tr. 1-4.)  To the extent that Plaintiff is challenging the Appeals Council's denial of review, the Court finds that there is substantial evidence in the record as a whole that supports the ALJ's finding and that the evidence submitted to the Appeals Council would not have changed the outcome.  Therefore, the Court finds that remand is not warranted on this account. *See Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."); *see also Hubner v. Astrue*, No. 609-CV-995-ORLDAB, 2010 WL 2573787, at *3 (M.D. Fla. June 24, 2010) (finding that where substantial evidence supports the ALJ's finding and the evidence submitted to the Appeals Council would not have changed the outcome, there was no error).

Here, Dr. Lowenstein notes that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, that Plaintiff had no limits to sitting, needs a sit/stand option, and should avoid heights. (Tr. 789-790.)  The ALJ's findings are identical as to these points, as he stated that Plaintiff had the RFC to do "light work" as defined in 20 C.F.R. 404.1567(b), must avoid unprotected heights, and must be able to alternate positions at will from sitting and/or standing/walking. (Tr. 20, Finding 5.)  The only discrepancy between the ALJ's RFC finding and Dr. Lowenstein's report pertains to the postural activities, as Dr. Lowenstein opined that Plaintiff could never perform them (Tr. 790) while the ALJ stated that Plaintiff could occasionally bend, crouch, and stoop (Tr. 20, Finding 5).

Social Security Regulations "establish a 'hierarchy' among medical opinions that provides a framework for determining the weight afforded each medical opinion." *Belge v. Astrue*, No. 3:09-cv-529-J-JRK, 2010 WL 3824156, at *3 (M.D. Fla. Sept. 27, 2010). Under this hierarchy, "the opinions of examining physicians are generally given more weight than nonexamining physicians; treating physicians receive more weight that nontreating physicians; and specialists on issues within their areas of expertise receive more weight than nonspecialists." *Id*. (internal citations and quotations omitted).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Here, the issue is whether the denial of benefits is rendered erroneous by Dr. Lownenstein's medical opinion. In *Robinson v. Astrue*, 365 F. App'x 993, 996 (11th Cir.

15

2010) (unpublished), a panel of the Eleventh Circuit confronted a highly similar situation. In *Robinson*, the claimant submitted to the Appeals Council "a disabled person's license plate affidavit completed by her treating physician," in which the claimant's treating physician opined regarding the claimant's walking limitations. *Bailey v. Astrue*, No. 3:09-cv-383-J-JRK, 2010 WL 3220302, at *7 (M.D. Fla. Aug. 13, 2010) (*quoting Robinson*, 365 F. App'x at 996). The *Robinson* court explained that the Appeals Council is required to consider "new, material, chronologically relevant evidence" and must remand the case if the ALJ's decision is contrary to the weight of the evidence currently of record. *Id.* Nonetheless, the Appeals Council may deny review if it finds no error after considering the new evidence. *Id.* The *Robinson* court concluded that the Appeals Council did not err by upholding the denial of benefits without making specific findings, explaining that "the Appeals Council was free to discount the treating physician's opinion concerning [the claimant]'s walking limitation because that opinion was inconsistent with the physician's other assessments and with other substantial evidence." *Id.* (*quoting Robinson*, 365 F. App'x at 997).

To the extent that Plaintiff's appeal is sufficient to challenge both the ALJ's decision and the Appeals Council's decision to deny review of the ALJ's decision, remand is not required here. Similar to the situation presented in *Robinson*, good cause exists here to discount Dr. Lowenstein's medical opinion as conclusory and not bolstered by the evidence (Tr. 790.) Dr. Lowenstein stated without explanation or reference to objective medical findings that Plaintiff cannot perform any postural activity. (Tr. 790.) Instead, he wrote as a blanket statement that all of his findings related to Plaintiff's ability to do work-related

16

activities were "[a]ll based on physical examination and X-rays" (Tr. 789) but provided no

specific support or documentation from his records.  Moreover, Plaintiff points to no other

records that directly support Dr. Lowenstein's assertion that Plaintiff is unable to perform

postural activities.  (Dkt. No. 12 at 14-16.)  Because good cause for discounting a treating

source's opinion exists where that opinion is conclusory and/or unsupported by objective

medical findings, the submission of Dr. Lowenstein's opinion to the Appeals Council does

not change the fact that substantial evidence on the record as a whole supports the ALJ's

decision.

### 2.   **The ALJ's Consideration of Plaintiff's Heterotopic Ossification**[6]

The ALJ determined that Plaintiff had the following severe impairments: status post

multiple lower extremity fractures, post traumatic osteoarthritis, and headaches. (Tr. 17,

Finding 3.)  Plaintiff argues, however, that the ALJ's failure to consider his heterotopic

ossification as a severe impairment warrants remand in this case. (Dkt. No. 12 at 9.)  In

support of this contention, Plaintiff states, "After reviewing the x-rays of April 18, 2007, Dr.

Lowenstein diagnosed heterotopic ossification." (Dkt. No. 12 at 9; Tr. 704.)  For the reasons

stated herein, Plaintiff's argument lacks merit.

At step two, the Commissioner must determine whether the claimant has a severe

impairment.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).  By its own terms, the evaluation at step two

is a *de minimis* test intended to weed out the most minor of impairments.  *See Bowen v.*

*Yuckert*, 482 U.S. 137, 153-154, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Augusto v. Comm'r*

---

[6]As Plaintiff correctly explains, heterotopic ossification involves formation of bone
tissue outside of the skeleton. (Dkt. No. 12 at 9.)

*of Soc. Sec.*, No. 6:06-cv-1889-Orl-DAB, 2008 WL 186541, at *5 (M.D. Fla. Jan. 18, 2008) ("The 'severe' impairment threshold of *step two* is a *de minimis* hurdle ... employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint.") (*quoting Lane v. Astrue*, No. 3:06-CV-445, 2008 WL 53706, at *5 (E.D. Tenn. Jan.3, 2008)). "At step two of the sequential evaluation the ALJ is required only to determine whether there is any severe impairment before proceeding with the next step in the sequential evaluation.  Thus, a finding of any severe impairment is enough to satisfy the requirements of step two."  *Lawson v. Astrue*, No. 5:09-cv-23-Oc-GRJ, 2009 WL 3617794, at *6 (M.D. Fla. Nov. 2, 2009).

According to Social Security Ruling 96-8p, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does "not constitute reversible error."  *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987); *see also McConnell v. Astrue*, No. 1:09-cv-00063-MP-WCS, 2009 WL 4405477, at *3 (N.D. Fla. Dec. 2, 2009) ("Even if there is error at step 2 . . . a remand is not needed if the error is harmless because the ALJ considered the limiting effects of the impairment at each succeeding step, along with other impairments.") (citations omitted).

Here, Plaintiff failed to show that heterotopic ossification was a separate severe impairment.  In support of his allegation, he cites only two record references to this diagnosis,

dated October 28, 1998 and April 18, 2007. (Dkt. No. 12 at 9.)  However, "[a] diagnosis alone is an insufficient basis for finding that an impairment is severe.  The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Sutton v. Astrue,* No. 3:09-cv-215-J-TEM, 2010 WL 3212085, at *4 (M.D. Fla. Aug. 12, 2010) (citations and internal quotations omitted). Even assuming Plaintiff's heterotopic ossification should have been considered a severe impairment, the ALJ's failure to consider it as such is not reversible error, as a finding of any severe impairment is enough to satisfy the requirement at step two.  *Lawson v. Astrue*, No. 5:09-cv-23-Oc-GRJ, 2009 WL 3617794, at *6 (M.D. Fla. Nov. 2, 2009).  Moreover, the ALJ considered Dr. Lowenstein's records, including the reference to heterotopic ossification, in formulating Plaintiff's RFC. (Tr. 19.)  As the ALJ properly considered all of Plaintiff's impairments and satisfied his burden at step two of the evaluation process, the Court finds that Plaintiff's argument as to his heterotopic ossification does not warrant remand.

### 3.  **Dr. Lowenstein's Finding that Plaintiff Meets Listing 1.02A**[7]

The ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (Tr. 20, Finding 4.)  Although Plaintiff appears to argue that he meets Listing 1.02A, he failed to demonstrate that his condition met any

---

[7]Plaintigg argues that he meets Listing 1.02, but because he alleged impairment with his ankles, knees, and hip (Dkt. No. 12 at 14), Listing 1.02A is the appropriate Listing.

19

Listing, and substantial evidence supports the ALJ's finding that Plaintiff's impairments do not meet one of the Listings.

In *Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir. 2002), the court discussed the listing of impairments:

> The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. § 404.1525(a). Part A of the Listing of Impairments contains medical criteria that apply to adults age 18 and over. *See* 20 C.F.R. § 404.1525(b); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *Id*. 20 C.F.R. § 404.1525(a)-(d). To "equal" a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.' *See* 20 C.F.R. § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment.

*See Id*.  The Supreme Court of the United States held that "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria" and that "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891-92, 107 L.Ed.2d 967 (1990).  The Supreme Court has also stated that a claimant has the burden of producing medical evidence that establishes all of the required medical findings.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).  In reviewing an ALJ's finding as to whether a claimant's impairment meets a listed impairment under the Act, courts consider whether the ALJ's decision is based on substantial evidence.  *See Keane ex*

20

*rel. Parcelles v. Comm'r of Soc. Sec.*, 205 Fed. Appx.748, 750-751 (11th Cir. 2006) (noting that an implied decision may be sufficient where supported by substantial evidence); *see also Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).

By meeting a listed impairment or otherwise establishing an equivalence, a plaintiff is presumptively determined to be disabled regardless of his age, education, or work experience. Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984). However, at this stage of the evaluation process, the burden is on the plaintiff to prove that he or she is disabled. *Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986); *Wilkinson v. Bowen*, 847 F.2d 660, 663 (11th Cir. 1987). In this Circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing. Where a plaintiff claims an impairment that equals one of the listed impairments, he must present medical evidence which describes how the impairment has such an equivalency. *Bell*, 796 F.2d at 1353. Mere diagnosis of a listed impairment is not enough, as the record must contain corroborative medical evidence supported by clinical and laboratory findings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). To "equal" a listing, "the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir.2002). The burden to establish a listed disability with the necessary objective medical documentation is reasonable considering that the ALJ's determination is dispositive as to the issue of disability without regard to any vocational

factors such as age, education, or work experience.  *Sullivan v. Zebley*, 493 U.S. 521, 532

(1990).

Listing 1.02A states:

> 1.02 Major dysfunction of a joint(s) (due to any cause):
> Characterized by gross anatomical deformity (e.g., subluxation,
> contracture, bony or fibrous ankylosis, instability) and chronic
> joint pain and stiffness with signs of limitation of motion or
> other abnormal motion of the affected joint(s), and findings on
> appropriate medically acceptable imaging of joint space
> narrowing, bony destruction, or ankylosis of the affected
> joint(s). With:
>
>> A. Involvement of one major peripheral
>> weight-bearing joint (i.e., hip, knee, or ankle),
>> resulting in inability to ambulate effectively, as
>> defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02A.  To meet Listing 1.02A, Plaintiff must establish

an "inability to ambulate effectively" as defined in 1.00B2b:

> Inability to ambulate effectively means an extreme limitation of
> the ability to walk; i.e., an impairment(s) that interferes very
> seriously with the individual's ability to independently initiate,
> sustain, or complete activities. Ineffective ambulation is
> defined generally as having insufficient lower extremity
> functioning (see 1.00J) to permit independent ambulation
> without the use of a hand-held assistive device(s) that limits the
> functioning of both upper extremities.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b.  Here, Plaintiff testified at the hearing that he

uses a cane but can walk without it. (Tr. 40.)  Thus, Plaintiff has failed to establish that his

ankle, knee, and hip impairments wholly precluded his ability to independently ambulate or

required him to use a hand-held assistive device that limited the functioning of *both* upper

extremities.  As Plaintiff has not proven that he had an inability to ambulate effectively, as

defined in 1.00B2b, he therefore cannot demonstrate that he met all of the criteria of Listing 1.02A.

Plaintiff nevertheless argues that his case should be remanded to the ALJ for consideration of Dr. Lowenstein's opinion that Plaintiff meets Listing 1.02. (Dkt. No. 12 at 14-16; Tr. 787-88.)  As noted previously, Dr. Lowenstein's opinion was submitted only to the Appeals Council.  However, this September 2009 opinion does not undermine the substantial evidence in the record that supports the ALJ's decision.  As outlined above, when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous. *Ingram*, 496 F.3d at 1262.  As an initial matter, opinions on some issues, such as "whether the claimant is disabled, whether the claimant's impairments meet or equal a listed impairment, the claimant's 'RFC,' and the application of vocational factors, are not medical opinions, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." *Miller v. Astrue*, No. 2:09-cv-650-FtM-DNF, 2011 WL 1598731, at *6 (M.D. Fla. April 28, 2011); 20 C.F.R. § 404.1527(e).  As such, Dr. Lowenstein's opinion that Plaintiff meets Listing 1.02 would in no way bind the ALJ.

The burden lies with Plaintiff to prove that he meets a Listing and must present medical evidence which describes how the impairment has such an equivalency. *Bell*, 796 F.2d at 1353.  Here, Plaintiff relies solely on Dr. Lowenstein's assessment to support his claim that his impairments meet Listing 1.02A, but as Defendant contends, "this assessment consists of nothing more than 'check-marks' indicating that Plaintiff has an anatomical deformity on his left and right ankle, left and right knee, and left hip." (Dkt. No. 13 at 17; Tr.

787-88.)  In addition, Dr. Lowenstein uses check-marks to identify that Plaintiff is unable to walk a block at a reasonable pace on rough or uneven surfaces or to climb a few steps at a reasonable pace with the use of a single hand rail. (Tr. 788.)  In making these assessments, however, Dr. Lowenstein does not provide documentation to support his findings, mention any objective medical findings, or explain the conclusions he reached, including why Plaintiff cannot walk on rough or uneven surfaces or climb steps with a handrail. (Tr. 787-88.)  As such, there exists sufficient "good cause" to discount his medical opinion, especially as to a dispositive issue generally reserved for the ALJ.  Accordingly, Plaintiff did not meet his burden of demonstrating that he meets Listing 1.02A or that remand is further warranted for consideration of Dr. Lowenstein's opinion.

### 4.  The ALJ's Finding as to Plaintiff's Ability to Perform His Past Work

Finally, to the extent that Plaintiff claims that he cannot return to his past work as a user support analyst (customer service representative), this argument is not supported by the Social Security Regulations. Plaintiff argues that the ALJ "failed to account for the fact that the last 'job' held by [Plaintiff] was sheltered employment.  It was a job created with special conditions." (Dkt. No. 12 at 13.)  Because his previous employer allowed him to work from home, take naps during the day, and work at his own pace, Plaintiff seems to argue that the ALJ improperly classified his former job as a user support analyst as past work because he operated under special conditions.  Although VE testimony is not required in determining whether a claimant can perform his past relevant work, the Social Security Regulations provide that a VE "may be used in making this determination because such an expert 'may offer relevant evidence within his or her expertise or knowledge concerning the physical and

24

mental demands of a claimant's past relevant work, *either as the claimant actually performed it or as generally performed in the national economy*.'" *Hennes v. Commissioner of Social Security Administration*, 130 Fed. Appx. 343, 346 (11th Cir. 2005) (quoting 20 C.F.R. § 404.1560(b)(2) (emphasis added)).  Here, the VE clearly testified that a hypothetical individual with Plaintiff's RFC could "return to the work as a user support analyst, or again the alternative title is customer service representative, both as defined and as performed." (Tr. 44.)  As such, the ALJ made no error by relying on the VE's testimony that Plaintiff could perform his past relevant work as a customer service representative, even if that past relevant work was done under special conditions. (Tr. 22-23.)  Even assuming that Plaintiff could not perform this job, the VE also testified that Plaintiff could perform other work that exists in significant numbers in the national economy: a mail clerk, an office helper, a ticket seller, and a surveillance systems monitor.  Therefore, substantial evidence supports the ALJ's finding that Plaintiff could perform his past work and/or other work and therefore was not disabled under the Social Security Act.

## IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence.  Accordingly, I **RECOMMEND** that the decision be **AFFIRMED**.

**IT IS SO REPORTED** at Tampa, Florida on this 23rd day of August, 2011.

ANTHONY E. PORCELLI
United States Magistrate Judge

## **NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Hon. Steven D. Merryday

Counsel of Record

26